**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) **Case Nos.** | **12-20035-03 (Criminal)** |
| v. ) | **14-2294 (Civil)** |
| ) | |
| **JOSE MEJIA,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

**MEMORANDUM AND ORDER**

This matter is before the court on defendant Jose Mejia's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 112). For the reasons stated below, the court denies the motion.

**I. FACTUAL BACKGROUND**

Defendant was charged with conspiracy to distribute more than 500 grams of methamphetamine and more than one kilogram of heroin (Count I); possession with intent to distribute more than 500 grams of methamphetamine (Count II); and possession with intent to distribute more than one kilogram of heroin (Count III). On January 15, 2013, defendant entered into a plea agreement with the government and pleaded guilty to Count I. (Doc. 74.)

A Presentence Report (PSR) was prepared and filed (Doc. 86), which set forth the follow facts: On February 27, 2012, a Kansas Highway Patrol trooper stopped a vehicle driven by Mitzi Nunez-Zuniga. A search of the car yielded large quantities of methamphetamine and heroin. Nunez-Zuniga said that she was going to be paid $2,000 for delivering the drugs in the car, and that the transaction was arranged by a female named "Dona." Nunez-Zuniga said she was supposed to call "Dona" once she arrived in Kansas City, Kansas, to make arrangements to meet with "Manny."

-1-

Nunez-Zuniga agreed to cooperate with law enforcement by making a controlled delivery. With law enforcement following her, Nunez-Zuniga drove to a parking lot, where law enforcement watched her meet with a man later identified as Manuel Navarette-Robles. Navarette-Robles got into the vehicle, and agents followed the car as it drove into the garage of a house in Kansas City. Navarette-Robles was arrested at the house.

Nunez-Zuniga later spoke with law enforcement and said that she had lied when she said "Dona" had arranged the trip. Nunez-Zuniga said defendant, who is the father of one of her children, actually made the arrangements. Telephone records obtained by law enforcement confirmed that defendant and Nunez-Zuniga were in contact 926 times in February 2012, including a call at the time of the controlled delivery. Nunez-Zuniga discussed two other drug delivery trips she made with defendant. On one of those trips, Nunez-Zuniga said they abandoned a car in Russell, Kansas, and on another they were stopped by the Kansas Highway Patrol. Law enforcement confirmed with the Russell Police Department that a car had been abandoned, as described by Nunez-Zuniga, and confirmed with the Highway Patrol that the car stop had occurred. Nunez-Zuniga also described making deposits of money with defendant. Law enforcement confirmed through bank records that these deposits were made.

On April 21, 2014, the court sentenced defendant to 81 months' imprisonment, which was less than the sentence called for under the advisory Sentencing Guidelines. This was due to a motion filed by the government (Doc. 106) and a post-conviction agreement (Doc. 110), wherein the government agreed to recommend a two-level reduction.

The plea agreement contained an appeal waiver, although defendant did not waive claims with regard to ineffective assistance of counsel. (Doc. 74 ¶11.) Notwithstanding that the plea agreement

contained the waiver, defendant untimely filed a notice of appeal. (Doc. 111.) On July 9, 2014, the Tenth Circuit dismissed defendant's direct appeal based upon timeliness grounds. (Doc. 116.)

Defendant filed this motion pursuant to 28 U.S.C. § 2255,[1] arguing that his attorney provided ineffective assistance of counsel. Specifically, defendant claims he received ineffective assistance because his lawyer purportedly failed to advise him of his constitutional rights to proceed to trial (Ground I) and assure there was a factual basis to support defendant's guilty plea (Ground II). Defendant also attacks his sentence, claiming that he was not provided the opportunity to allocute at sentencing (Ground III) and asserting that his attorney failed to timely file a notice of appeal (Ground IV).

## II. LEGAL STANDARDS

The court applies the standard identified in *Strickland v. Washington*, 466 U.S. 668 (1984), when determining whether a habeas petitioner's counsel provided ineffective assistance. *See Romano v. Gibson*, 278 F.3d 1145, 1151 (10th Cir. 2002) (applying *Strickland*). Under *Strickland*, a petitioner bears the burden of satisfying a two-pronged test in order to prevail. First, he must show that his attorney's "performance was deficient" and "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. The court affords considerable deference to an attorney's strategic decisions and "recognize[s] that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

Second, a habeas petitioner must demonstrate prejudice, which requires a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* But, despite the existence of two prongs, "there is no

---

[1] The court is mindful of defendant's pro se status and liberally construes his pleadings. *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("Finally, because Pinson appears pro se, we must construe his arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the [petitioner] makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

### III. ANALYSIS

#### A. Defendant's Plea Agreement

##### 1. Ground I

Defendant claims that his attorney failed to advise him of his "Boykin trial rights." (Doc. 112 at 5.) The court assumes defendant is referring to *Boykin v. Alabama*, which stands for the proposition that a court must affirmatively determine that a guilty plea is entered intelligently and voluntarily. 395 U.S. 238, 242 (1969). While the court is unclear exactly what defendant is claiming he did not understand, it appears he is claiming he did not know he could proceed to trial.

Upon a thorough review of the record in this case, the court believes defendant intelligently and voluntarily entered a plea of guilty to Count I. Foremost, defendant filed with the court a Petition to Enter Plea of Guilty and Order Entering Plea. (Doc. 73.) In his petition, defendant stated that he knew he had a right to plead not guilty, he had a right to a speedy and public trial, and he was waiving his right to a trial. (Doc. 73 ¶¶ 7, 8.) Defendant also acknowledged that he was guilty of the offense. (*Id.* ¶ 20.)

At defendant's Rule 11 plea colloquy, the court explained to defendant that he had a right to plead not guilty and that, if defendant pleaded not guilty, he would have a right to a speedy and public trial by jury. (Doc. 117-2 at 5–6).[2] Defendant stated in open court that he understood his right to plead

---

[2] The court notes that the government cites to the sentencing transcript in support of its argument that defendant's plea was intelligent and voluntary. (Doc. 117 at 5 (citing to "*Sentencing Transcript*," Attachment "A," which is the April 21, 2014 transcript of defendant's sentencing hearing (Doc. 117-1)).) However, given the substance of the cited testimony and the

not guilty and that he was waiving his constitutional right to a trial. (*Id.* at 6, 8.) The court informed defendant about his specific rights at trial, and that by pleading guilty he was giving up those rights. (*Id*. at 6–7.) The court further informed defendant that pleading guilty would have certain effects, including negative consequences concerning his right to remain in the United States. (*Id*. at 11.) During the colloquy, the court explained the sentencing process to defendant, (*id*. at 13–15), and the appeal waiver contained in the plea agreement. (*Id*. at 20.) Defendant acknowledged that no one forced him to enter the plea or made any promises, other than the plea agreement, to induce him to enter his guilty plea. (*Id*. at 21–22.) Defendant admitted he was guilty of the charged offense. (*Id*. at 22.)

The court finds no evidence in the record that defendant's attorney was ineffective in this regard. However, even if defendant could show his attorney's performance was objectively unreasonable, he cannot show that defense counsel's actions caused him to plead guilty. *See United States v. Melcher*, 378 F. App'x 810, 812–13 (10th Cir. 2010) (holding that defense counsel's promise related to defendant's sentence was not objectively unreasonable given that defendant was properly advised in the plea agreement and at his plea colloquy of his potential sentence). The record is clear that defendant was fully advised of the rights he would be waiving if he pleaded guilty to Count I. The court finds that defendant intelligently and voluntarily entered a plea of guilty and waived his right to a trial.

### 2. Ground II

Defendant contends he was denied effective assistance of counsel because, he argues, there was not a sufficient factual basis for his guilty plea. To convict defendant under Count I, the government would have to establish the following elements:

---

cited transcript page numbers, the court believes the government intended to cite to defendant's January 15, 2013 plea hearing, a transcript which the government provided as Attachment "B." (Doc. 117-2.)

> (1) Two or more persons agreed to violate the federal drug laws;
>
> (2) The defendant knew the essential objective of the conspiracy;
>
> (3) The defendant knowingly and voluntarily involved himself in the conspiracy;
>
> (4) There was interdependence among the members of the conspiracy; and
>
> (5) The overall scope of the conspiracy involved at least 500 grams of methamphetamine.

*Pattern Crim. Jury Instr. 10th Cir.* 2.87 (2011).

The court has reviewed in detail the factual basis for defendant's guilty plea, which is set forth in defendant's Plea Agreement.  (Doc. 74 ¶ 2, at 2–5.)  The factual basis clearly established each of the requisite elements.  First, the factual basis established that two or more persons agreed to violate federal drug laws—defendant, Nunez-Zuniga, and Navarette-Robles each agreed to distribute methamphetamine and heroin.  Second, the factual basis set forth that defendant knew the essential objective of the conspiracy—he arranged for the delivery of the drugs, and had contact with Nunez-Zuniga, which was corroborated with phone records, on the day of the delivery to coordinate the delivery.  Third, defendant knowingly and voluntarily involved himself in the conspiracy by arranging for and coordinating Nunez-Zuniga's delivery of the drugs to Navarette-Robles.  Defendant had made previous trips with Nunez-Zuniga, during which they delivered drugs to Navarette-Robles.  Defendant also deposited money obtained from drug sales, which was corroborated with bank records.  Fourth, there was interdependence—Navarettte-Robles depended on Nunez-Zuniga to deliver the drugs, and Nunez-Zuniga depended upon defendant to coordinate the delivery.  Fifth, the conspiracy involved at least 500 grams of methamphetimine—the facts show 6.95 kilograms of methamphetamine were delivered in one single delivery.

The court finds there was a sufficient factual basis upon which to accept defendant's plea of guilty to Count I. Accordingly, the court denies defendant's claim that his counsel was ineffective on this basis.

### B. Defendant's Sentence and Appeal

#### 1. Ground III

Defendant next claims that he was not provided an opportunity to allocute, or provide a statement to the court, at his sentencing. Federal Rule of Criminal Procedure 32(i)(4)(A)(ii) requires a district court to "address the defendant personally in order to permit the defendant to speak or present any information" before imposing a sentence. Allocution is vital to the sentencing process, and a denial of this right requires reversal of the sentence imposed. *United States v. Landeros-Lopez*, 615 F.3d 1260, 1264 (10th Cir. 2010) (citing *Green v. United States*, 365 U.S. 301, 304 (1961)).

In this case, the court gave defendant the opportunity to speak at his sentencing, which defendant declined:

> THE COURT: Mr. Mejia, is there anything that you want to say on your behalf, or is there any evidence you want to offer in mitigation, which means in lessening of your sentence?
>
> THE INTERPRETER: No.

(Doc. 117-1 at 13.) The court asked defendant if he wanted to provide a statement *before* the court announced its proposed findings of fact and tentative sentence. (*Id.* at 10.) After defendant declined to make a statement, the court announced its proposed findings of fact and tentative sentence, (*id.* at 17–19), and after affording the parties another opportunity to speak, (*id.* at 19–20), the court imposed defendant's sentence, (*id.* at 20–21). The court finds defendant was provided a meaningful opportunity to speak at his sentencing. Additionally, and for the reasons set forth below, the court finds that

-7-

defendant is not entitled to relief on the basis that he waived his right to collaterally attack his sentence.

### 2. Ground IV

Defendant claims ineffective assistance because his counsel did not file a notice of appeal. A defendant receives ineffective assistance of counsel if his attorney disregards a specific instruction to take an appeal from a conviction or sentence. *Roe v. Flores-Ortega,* 528 U.S. 470, 477 (2000) (citing *Rodriquez v. United States,* 395 U.S. 327, 328 (1969)). In this case, defendant fails to make any allegation that he asked his attorney to file an appeal or that his attorney failed to consult with him about the possibility of filing an appeal. On this basis alone, the court finds that defendant has failed to meet his burden of establishing his counsel's assistance was ineffective.

The court also notes that defendant's plea agreement contains a waiver of appeal and collateral attack of his conviction or sentence. (Doc. 74 ¶ 11, at 10–11.) In general, a court will hold a defendant to the terms of a lawful plea agreement. *United States v. Arevalo-Jimenez*, 372 F.3d 1204, 1207 (10th Cir. 2004); *United States v. Atterberry*, 144 F.3d 1299, 1300 (10th Cir. 1998). A knowing and voluntary waiver of 28 U.S.C. § 2255 rights is enforceable. *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001). The court is mindful that defense counsel may not refuse to file a notice of appeal based upon a waiver in the plea agreement. *United States v. Parker*, 720 F.3d 781, 786 (10th Cir. 2013) (stating that "the waiver must ordinarily be raised by the government and a court, not counsel, must determine its efficacy"). As such, the court will turn to whether the waiver is enforceable. If so, defendant cannot establish he suffered prejudice as a result of his counsel's failure to file a notice of appeal.

The court applies a three-pronged analysis to evaluate the enforceability of such a waiver, in which the court must determine: (1) whether the scope of the waiver covers the disputed issue; (2)

whether the defendant knowingly and voluntarily waived his rights; and (3) whether enforcement of the waiver would result in a miscarriage of justice. *See United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004).

### 3. Scope of Waiver

In determining whether a disputed issue is within the scope of the waiver, courts look to the plain language of the plea agreement. *United States v. Anderson*, 374 F.3d 955, 957–58 (10th Cir. 2004). The court strictly construes the waiver and resolves any ambiguities against the government. *Hahn*, 359 F.3d at 1343. Defendant's plea agreement at paragraph 11 states:

> The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed herein including the length and conditions of supervised release. The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by United States v. Cockerham, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c) and a motion brought under Fed. Rule of Civ. Pro 60(b) [sic]. In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court.

(Doc. 74 at 10–11.) In addition, defendant confirmed at the plea hearing that he understood he was waiving any right to appeal or collaterally attack his sentence. (Doc. 117-2 at 19–20.)

The court construes the plea agreement "according to contract principles and what the defendant reasonably understood when he entered his plea." *Arevalo-Jimenez*, 372 F.3d at 1206 (internal quotation and citations omitted). As set forth in the plea agreement, defendant waived his right to appeal any sentence within the guideline range or to otherwise challenge his sentence in any

-9-

collateral proceeding, including a motion brought under 28 U.S.C. § 2255. Defendant cannot overcome a reading of the plain language of the plea agreement, even using a narrow construction of the scope of the waiver. *See Hahn*, 359 F.3d at 1325.

### 4. Knowing and Voluntary

In determining whether a defendant's waiver was knowing and voluntary, the court looks to the specific language of the plea agreement and the court's Rule 11 plea colloquy with the defendant. *See id.* Defendant's plea agreement expressly states that defendant had sufficient time to discuss the agreement with counsel, he freely and voluntarily entered into the agreement, and the agreement was not the result of any threats, duress, or coercion. (Doc. 74 at 13.)

During defendant's Rule 11 colloquy, the court asked defendant a series of questions regarding his understanding of the consequences of the plea, to which defendant responded that his entry of the plea was voluntary and that he understood the consequences. (Doc. 117-2 at 4–27.) Because defendant is "bound by his solemn declarations in open court," *Lasiter v. Thomas*, 89 F.3d 699, 703–04 (10th Cir. 1996) (internal quotation marks omitted), the court finds that defendant knowingly and voluntarily entered his plea, and nothing in the record suggests otherwise.

### 5. Miscarriage of Justice

Enforcing a waiver of rights results in a miscarriage of justice if (1) the court considered an impermissible factor such as race; (2) the defendant received ineffective assistance of counsel in connection with the negotiation of the waiver; (3) the sentence exceeds the statutory maximum; or (4) the sentence is otherwise unlawful, and is the result of error that seriously threatens the fairness, integrity, or public reputation of judicial proceedings. *Hahn*, 359 F.3d at 1327. Defendant bears the burden of demonstrating that a waiver results in a miscarriage of justice. *Anderson*, 374 F.3d at 959 (citation omitted).

Here, the court did not consider any impermissible factors in determining defendant's sentence, the sentence is actually below the statutory range, and even if the court imposed an unlawful sentence, such was not the result of error that seriously affects the fairness, integrity, or public reputation of judicial proceedings. Moreover, with respect to assistance of counsel in negotiating the waiver, defendant makes no allegation that he was denied effective assistance related to the waiver itself, and the court already determined above that defendant received effective assistance of counsel in negotiating the plea agreement, which included the waiver. Defendant was repeatedly apprised of the consequences of pleading guilty, thereby rendering baseless his claims of ineffective assistance. *United States v. Kutilek*, 260 F. App'x 139, 147 (10th Cir. 2008). Accordingly, the court finds no reason why enforcement of the waiver would result in a miscarriage of justice. To that end, even if defendant had asked his attorney to file an appeal, defendant suffered no prejudice, as he had waived any right to appeal his conviction or sentence.

### C. Certificate of Appealability

The court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, a defendant must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). The court is not convinced that its conclusions are debatable among reasonable jurists or that the issues presented merit further proceedings. For the reasons stated above, the court finds that defendant has not made a substantial showing of the denial of a constitutional right. The court declines to issue a certificate of appealability in accordance with Rule 11 as amended December 1, 2009.

-11-

**IT IS THEREFORE ORDERED** that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Doc. 112) is denied.

Dated this 17th day of June, 2015, at Kansas City, Kansas.

                                      s/ Carlos Murguia
                                      **CARLOS MURGUIA**
                                      **United States District Judge**